**Harry WEAVER et ux., Appellants,**

v.

**J. H. BLACK, Appellee.**

**No. 6179.**

Court of Civil Appeals of Texas.

Beaumont.

Nov. 13, 1958.

Rehearing Denied Dec. 31, 1958.

Dies, Anderson & Dies, Lufkin, for appellants.

Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellee.

HIGHTOWER, Justice.

Harry Weaver and wife, appellants herein, brought this suit against J. H. Black, appellee, for automobile and personal injury damages sustained by himself and wife as a result of an intersection collision. Mrs. Weaver, accompanied by Mr. Weaver, was driving their automobile on the occasion in question. The appeal is from a take-nothing judgment.

The jury found favorably to the appellants on every issue relating to the liability of the appellee. However, of the several issues submitted by the appellee regarding contributory negligence, the jury found that Mrs. Weaver failed to keep a proper lookout, failed to maintain proper control of her automobile and further found such omissions to have been proximate causes of the collision. The jury awarded $5,000 by reason of the injuries sustained by Mrs. Weaver. They found that Mr. Weaver had sustained no damage other than that which accrued to his automobile.

Of the appellants' five points the first four, as grouped and briefed, charge that the court erred in admitting the testimony of Dr. Floyd MacPherson, an orthopedic surgeon of Shreveport, Louisiana, based upon X-ray pictures which were not present at the time the doctor testified.

The collision occurred August 10, 1955. Prior to the collision, July 19, 1955, Mr. Weaver had injured his elbow and at such time he had engaged the services of Dr. James G. Taylor of Lufkin, Texas, who, after having made X-rays, acted to repair the injury and placed a cast upon the arm in such manner as to hold the elbow rigid. The arm was in this cast at the time of the collision. After having performed these services Dr. Taylor again, the same day, made X-rays and diagnosed the injury, which diagnosis is not in dispute, as a dislocation of the elbow and a fracture of the radius of the elbow. After the collision of August 10th Mr. Weaver again sought the services of Dr. Taylor who again made X-rays of the injury but attempted no further treatment. Instead, he recommended the services of the orthopedic surgeon above mentioned. On September 6th following, Mr. Weaver saw Dr. MacPherson in his offices in Shreveport, Louisiana, at which time he turned all of the X-rays previously taken by Dr. Taylor over to him. On this date Dr. MacPherson also made X-ray pictures and on the 14th day of September, 1955, by surgery, he removed the head of the radius in the elbow.

It was the appellants' theory that Mr. Weaver's elbow was properly set following the July break and that it was reinjured in the collision made the basis of this suit; that the operation performed subsequently was made necessary by such collision.

On January 2, 1957, at the instance of appellee, oral deposition was had of Dr. Taylor, who testified that the X-rays taken by him on July 19th, as aforesaid, were then in the possession of Dr. MacPherson in Shreveport. The attorneys then journeyed to Shreveport where the deposition of Dr. MacPherson was taken by agreement. It turned out that Dr. MacPherson did not then have in his possession the X-rays of July 19th, but did possess notes he had made from his examination of them. The appellants then objected to any testimony Dr. MacPherson might give absent the X-rays just mentioned. Dr. MacPherson proceeded to depose and the substance of such testimony as here pertinent was to the effect that the collision of August 10th had in no manner altered or aggravated the pre-existing injury to appellant's elbow. Speaking of the X-rays which he, himself, had made on the 6th day of September he testified:

"Well, you see here a fracture of the neck of the radius that is the approximate end of it with the fracture fragment constituting the major portion of the head of the bone, it is displaced forward in the elbow and cocked up about forty-five degrees."

Asked his opinion of the X-rays taken before the automobile collision and the ones taken afterwards, he testified:

"They were the same, that is the films taken after dislocation of the elbow was reduced. You see this man originally had a dislocation as well as this fracture. And a set of the films that came with him on September 6th, the films were dated the 19th of July, they showed the dislocation of the elbow and then the doctor reduced the dislocation and then took films afterwards. And they showed a fracture of the

head of the radius to be identical with the films I took September 6th, both in size of the fracture and the position of the fragment." He added that his conclusions that the automobile accident had not altered or aggravated the pre-existing injury, were based solely upon his comparison of the X-rays made by him on September 6th with those made by Dr. Taylor on July 19th after the dislocation was reduced.

The foregoing testimony having been admitted in evidence in the course of the trial over appellants' objections, they contend, under their first four points of error, that the pictures were not proved to have been taken and developed in accordance with recognized scientific principles accurately reflecting Mr. Weaver's injury; that they were denied the right of an adequate cross-examination of such witness in the circumstances, and that such denial caused the rendition of an improper verdict. They call attention to the testimony of Dr. Taylor, who testified in person at the trial, to the effect that the X-rays made by him on July 19th, immediately after he had repaired the injury to Mr. Weaver's elbow, disclosed the head of the radius therein to be back to a normal and satisfactory position. They also call attention to the finding of the jury that Mr. Weaver sustained no damage to his person as a result of the collision and they then correctly state it to be undisputed that he did in fact sustain some damage in the form of bruises and abrasions to various portions of his body other than his elbow. They then say that it is evident that the admission of MacPherson's testimony affected the credibility of the appellants' testimony to the extent that the jury likewise found the aforesaid liability issues of lookout and proper control against them.

■ Assuming, without deciding, that the verdict of the jury was improper for some reason and the admission of MacPherson's testimony was error, we are of the opinion that it cannot be held to have contributed, for the reasons above ascribed by the appellants, to cause the finding of the aforesaid liability issues against the appellants. This being true then the finding on the damage issue is immaterial. Undoubtedly the testimony formed the basis for the jury's finding on the damage issue against the appellants, but to say that it prejudiced the appellants' credibility before the jury to the extent that they likewise found these liability issues against them would be most illogical. To so hold would be to entirely disregard the findings that Mrs. Weaver had sustained damages in the sum of $5,000; that all the liability issues submitted by appellants (some 15 or more) were answered favorably to them, and that the jury found that the collision was not the result of an unavoidable accident. For whatever reasons the jury's findings on these two liability issues may have been wrong, they are not wrong for those reasons advanced by appellants under their first four points and such points are therefore overruled.

■ By their fifth and last point the appellants say that as a matter of law the failure of Mrs. Weaver to keep a proper lookout could not have been a proximate cause of the collision. They have not, however, raised any point in their brief in reference to the jury's finding that the failure of Mrs. Weaver to maintain proper control of the automobile was a proximate cause of the collision. By reason of such omission we are without authority to determine the merit of their argument relating to such jury finding. Such finding itself being sufficient to support the judgment against the appellants, it follows that a determination by us favorable to them of their point relating to the proper lookout finding would avail them nothing. We therefore pretermit discussion of the appellants' fifth point and affirm the judgment of the trial court.